**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                No.18-CR-00928 MV

ROBERT HAACK

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

THIS MATTER is before the Court on the government's Motion in Limine for Pretrial Ruling That Haack's False Representations About the Provenance of the Jewelry He Sold to Two Victims and a USFW Agent are Relevant and Admissible [Doc. 118] and the government's Notice of Intent to Introduce 404(b) Evidence/Motion in Limine for Intrinsic Evidence and 404(b) Rulings [Doc. 120]. Having considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the motions are well-taken and will be granted. Also before the Court is Defendant Haack's Motion in Limine to Exclude Evidence Under Rules 404(b)(3) & 403 [Doc. 125]. Having considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be denied.

**BACKGROUND**

In 2012, the U.S. Fish and Wildlife Service (USFW) launched an investigation into the sale of purportedly counterfeit Charles Loloma jewelry. Doc. 45 at 1. The late Charles Loloma was a world-renowned jeweler and one of the most significant Native American artists of the twentieth century. Doc. 49 at 2; Doc. 45-1 at 14. His jewelry is highly collectible and typically sells for tens of thousands of dollars. Doc. 49 at 2; Doc. 45-1 at 14.

Based on complaints from within the jewelry community, agents from the USFW came to

suspect that jewelry sold under the eBay username "Harvardantique" was counterfeit. Doc. 49 at 2. When agents determined that Mr. Haack operated the "Harvardantique" account, he became the subject of its criminal investigation. *Id.* On April 9, 2013, a USFW agent purchased a "Loloma" ring from Mr. Haack for $4,300. *Id.*; Doc. 45-1 at 15. On June 16, 2014, the same agent purchased a "Loloma" bracelet from Mr. Haack for $15,098. Doc. 49 at 2; Doc. 45-1 at 18. Forensic examiners, as well as Mr. Loloma's niece, Verma Nequatewa, examined the pieces and deemed them to be inauthentic.  Doc. 49 at 1-2.

According to subpoenaed bank records, Mr. Haack sold approximately 41 pieces of purported Loloma jewelry on eBay from December 2008 through March 2015 for approximately $439,810.95. Doc. 45-1 at 19. After a customer complaint filed on eBay in 2015, Mr. Haack began selling purported Loloma jewelry directly to customers such as "D.H.," who paid approximately $60,694 for various pieces of purported Loloma jewelry between 2015 and 2017. *Id.* at 23. When questioned by agents, Mr. Loloma's former business manager dismissed the possibility that Mr. Haack could have acquired such a significant collection of Loloma pieces. *Id.* at 16-17. USFW agents also obtained bank records showing that Mr. Haack had made significant purchases of raw materials consistent with jewelry making between 2008 and 2017. *Id.* at 25-27.

Based on this information, on December 7, 2017, Special Agent Zachary J. Oper applied for a search warrant to search Mr. Haack's residence. Doc. 45-1 (First Search Warrant Application). On December 13, 2017, USFW agents executed the search warrant on Mr. Haack's home. USFW agents seized various items, including half-finished jewelry etched with the characteristic Loloma signature, engraving tools, bookmarked Loloma reference material, and jewelry-design sketches. Doc. 49 at 5.

Mr. Haack was ultimately charged with two counts of Wire Fraud, in violation of 18 U.S.C.

§ 1343, two counts of Mail Fraud, in violation of 18 U.S.C. § 1341, two counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), and two counts of Violation of the Indian Arts and Crafts Act, in violation of 18 U.S.C. § 1159. These charges resulted from the sale of the following items of jewelry to an undercover USFW agent, Russell Stanford: an April 9, 2013 sale of the item listed as "Charles Loloma Kachina Face Ring" and a June 16, 2014 sale of the item listed as "Charles Loloma Modernist Katsina Face Bracelet."

On the instant motions, the government seeks to introduce eBay records showing that from 2008 to 2015, Mr. Haack, under his username "harvardantique," offered approximately 54 pieces of jewelry purportedly made by Charles Loloma for sale on eBay. Doc. 118-1. In eBay listings, Mr. Haack consistently represented that the jewelry was acquired from Mr. Loloma, often in Hoteville where Mr. Loloma's studio was located. Doc. 118-2. The advertisements typically listed the year of acquisition to be between 1975 and 1985. *Id.* The government also seeks to introduce statements that Mr. Haack made to Lori Sadosky, D. Scott Bradley, and the undercover USFW agent who purchased purported Loloma jewelry from Mr. Haack's eBay account. Doc. 118.

Lori Sadosky purchased four Loloma jewelry pieces from Mr. Haack's eBay account. On July 20, 2009, Sadosky purchased "Superb Charles Loloma Bracelet" for $12,994. Doc. 120 at 3–4. On September 14, 2009, she purchased "Extraordinary Charles Loloma Cuff Bracelet" for $16,994. *Id.* On June 4, 2012, she purchased "One Owner Charles Loloma Inlay Gemstone Ring" for $4,356. *Id.* And on July 23, 2012, she purchased "One Owner Charles Loloma Inlay Gemstone Bracelet" from Haack for $18, 994. *Id.* Regarding the source of the jewelry, Mr. Haack made the following representation to Ms. Sadosky:

> My father was the founder of International Metals (later NYSE:IMCO) based in Tulsa, OK and Los Angeles, CA. He traveled with my mother through Hopi several times a year for almost 30 years and amassed a substantial Native American art collection. The jewelry of Charles Loloma was my mothers passion.
>
> I can also accept personal check or wire transfer. If you would prefer one of these methods instead of Paypal please let me know and I will provide the necessary information.
>
> Best regards,  Robert

Doc. 118 at 2–3.

Another individual, D. Bradley Scott, purchased two purported Loloma jewelry pieces from Mr. Haack. On July 11, 2011, he purchased "A One Owner Charles Loloma Inlay Gemstone Ring" from Mr. Haack for $3,946. Doc. 120 at 4. On July 21, 2014, he purchased "A Rare Charles Loloma Inlay Height Bracelet" for $7,106. *Id.* Mr. Haack made the following representation to Mr. Bradley about the provenance of the ring:

> Your Charles Loloma ring was purchased from Charles' Hoteville workshop in 1984 by Dale Artellio. Dale was a close friend and business partner of my father and they were together on one of their many road-trips from Ventura, CA to Tulsa, OK when the ring was acquired. Both of our families assembled an extensive collection of Native American material during the years between 1965 and 1995 encompassing everything from pottery to textiles to jewelry. Dale passed away recently.
>
> Sincerely,
>
> Robert Haack

Doc. 118 at 2–3.

When an undercover USFW agent sought to purchase purported Loloma jewelry from Mr. Haack, Mr. Haack made the following statement regarding one of the pieces charged in the Superseding Indictment:

slipped my mind. This piece was purchased by my mother and father on one of their may trips through Hopi in that began in the late 60's and continued until the early 90's. My father was the founder of International Metals Corporation (NYSE:IMCO) and traveled by car several times each year between his facilities in Tulsa, OK and Ventura, CA. It was on these trips that my family acquired the Native American collection of which Loloma is a part. Best regards, Robert

- harvardantique

Doc. 118 at 2.

Linda Catalino purchased two Loloma jewelry pieces from Mr. Haack's eBay account. Doc. 120 at 4. On June 17, 2013, she bought "One Owner Charles Loloma Inlay Pendant Featuring Nevada Blue Turquoise" for $1,956. *Id.* On April 6, 2015, she purchased "One Owner Charles Loloma Katsina Face Bracelet" for $8,961.50. *Id.* at 4-5. The government expects that she will testify that when she received the bracelet it looked "pristine" which led her to ask Mr. Haack questions about the piece. *Id.* at 5. Mr. Haack did not respond. *Id.* Ms. Catalino then contacted Verma Nequatewa and Bob Rhodes, business associates of Mr. Loloma's, fearing that the bracelet might be counterfeit. She then requested a refund from Mr. Haack, which she received. *Id.*

Furthermore, the government anticipates testimony from Bob Rhodes, Charles Loloma's business manager from 1978-80, as well as Verma Nequatewa, who worked at Loloma's studio between 1970 and 1989 that: (1) there are very few collectors who would have acquired 54 Loloma pieces; (2) none of those collectors would have acquired that many pieces directly from the studio; (3) repeat customers at the studio were remembered; (4) anyone who bought more than one or two pieces at a time would surely have been remembered; and (5) anyone who had bought several pieces, and several pieces on repeated trips, would have been remembered as a very special customer. Doc. 118 at 3. The government also anticipates testimony from both Mr. Rhodes and

Ms. Nequatewa that they do not recognize the names of Genevieve Haack, Dale Artellio, or Clarence Haack, three individuals to whom Mr. Haack attributed the purchases of items of purported Loloma jewelry. *Id.* Mr. Haack objects to admission of this evidence.

## DISCUSSION

Mr. Haack first argues that the evidence that the government has proffered regarding sales of jewelry not charged in the Superseding Indictment—including (1) a spreadsheet of eBay records listing purported items of Loloma jewelry, (2) statements by Mr. Haack regarding the provenance of items of jewelry other than those in the charged sales, both in eBay listings and in direct communications with purchasers, (3) witness testimony by purchasers Lori Sadosky, D. Scott Bradley, and Linda Catalino, and (4) witness testimony by Loloma associates Verma Nequatewa and Bob Rhodes regarding items not listed in the Superseding Indictment—is not relevant under Rule 401 of the Federal Rules of Evidence to the acts charged in the instant case unless the government can make a showing that the items of jewelry involved are counterfeit. Doc. 148 at 1-2. He argues that "[t]hose pieces of jewelry are not relevant to either the charges in this case, nor any alleged scheme the United States purports Mr. Haack contrived, unless the United States can show that each piece of jewelry that the United States would like to present is inauthentic." Doc. 142 at 1. Mr. Haack argues that the relevance of any items of jewelry or sales not mentioned in the Superseding Indictment depends on the government's willingness and ability to make such a showing with respect to the items addressed. *Id.* at 2. Notably, Mr. Haack's arguments regarding relevance were based on the government's assertion that it did not intend to prove the counterfeit nature of individual items of jewelry not listed in the Superseding Indictment. Doc. 140 at 5; Doc. 148 at 2. The government has since clarified that it is "willing and able to prove the counterfeit nature of the uncharged jewelry." Doc 153 at 2-3.

"[E]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998) (quoting Fed. R. Evid. 401). Relevance incorporates concepts of materiality and probative value. *Id.* Regarding materiality, "[a] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, *or a chain of inferences*, about an issue that is necessary to a verdict." *Id.* (citing Charles Alan Wright & Kenneth W. Graham, Jr., 22 Fed. Prac. & Proc. Evid. § 5164, at 342-43 (1978) (emphasis added)). Regarding probative value, evidence that establishes "even a minimal degree of probability—i.e. 'any tendency'—that the asserted fact exists is sufficient to find the proffered evidence relevant." Id. (quoting Fed. R. Evid. 401). Thus, the bar for probative value under Rule 401 is "very low." *Id.* (citations omitted).

As an initial matter, the Court finds that the proffered evidence is relevant regardless of whether the government proves the counterfeit nature of each individual piece of jewelry not mentioned in the Superseding Indictment. Taken together, the proffered evidence does tend to make it more likely that Mr. Haack perpetrated a scheme to defraud purchasers of the items of jewelry that he listed for sale, even without proof of the counterfeit nature of individual uncharged items. The volume of listings of purported items of Loloma jewelry and Mr. Haack's descriptions of how he acquired them, together with testimony from Loloma associates that they would have knowledge of anyone who had personally acquired more than a few Loloma pieces, tends to show that Mr. Haack was engaged in selling counterfeit jewelry and misrepresenting its provenance. That is, it "provide[s] the fact-finder with a basis for making some inference, or a chain of inferences, about an issue that is necessary to a verdict," namely the existence of a scheme to defraud. *McVeigh*, 153 F.3d at 1190 (citations omitted). It is not necessary that this evidence, alone

7

or in combination, proves the existence of such a scheme, only that it lends "even a minimal degree of probability" to the argument that such a scheme existed.  *Id.* (citations omitted). Likewise, expected testimony from Ms. Catalino that she raised concerns to Mr. Haack about the jewelry's authenticity, along with the eBay record that demonstrates that Mr. Haack stopped listing Loloma jewelry on the site shortly thereafter, tends to show Mr. Haack's awareness that the jewelry he was listing and selling was inauthentic. This evidence goes directly to the existence of a plan or scheme to defraud purchasers.

Moreover, as noted above, the government has clarified that it is prepared to prove the counterfeit nature of each item of jewelry for which it intends to introduce purchaser testimony. Testimony from purchasers regarding the sale of counterfeit Loloma jewelry through the same platform as the charged sales is highly material and probative of a scheme to defraud. Thus, there is no question that the proffered evidence meets the relevancy standard of Rule 401.

Next, Mr. Haack argues that the proffered evidence is extrinsic, rather than intrinsic, and therefore subject to Federal Rule of Evidence 404(b), and that under Rule 404(b), it is too far removed from the charged crimes to meet the strictures of Rule 404(b). The Court does not agree, but rather finds, as the government argues, that the proffered evidence is indeed intrinsic.

"Other act evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (quotation omitted). There is no requirement that intrinsic evidence establish an element of the charged offense. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011). Rather, "[e]vidence is considered 'intrinsic' when it is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury, and

'extrinsic' when it is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *United States v. Alfred*, 982 F.3d 1273, 1279 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 2834 (2021). Thus, intrinsic evidence is "essential to the context of the crime." *Irving*, 665 F.3d at 1212. Importantly, intrinsic evidence can occur before or after the specific crimes charged. See *United States v. Murry*, 31 F.4th 1274, 1290 (10th Cir. 2022); *United States v. Durham*, 902 F.3d 1180, 1225 (10th Cir. 2018).

Several cases from sister circuits have held that uncharged prior instances of fraud falling outside the time frame of the charged "scheme" can be admissible as intrinsic evidence. *See United States v. McGauley*, 279 F.3d 62, 72-73 (1st Cir. 2002) (upholding admission of 217 uncharged refund checks falling outside scope of scheme as intrinsic evidence even though the indictment charged only three counts of mail fraud); *see also United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015) ("[U]ncharged conduct that is part of the same scheme or series of transactions and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence."); *United States v. Bajoghli*, 785 F.3d 957 (4th Cir. 2015) ("[C]onduct that takes place outside of the time frame of the charged offense [is intrinsic] where it is, *inter alia*, 'relevant to establishing an element of the offense.'" (citation omitted). Under this persuasive authority, the fact that, here, some of the eBay listings date to almost five years prior to the charged scheme does not necessarily render them extrinsic evidence.

The Tenth Circuit's decision in *United States v. Parker*, 533 F.3d 1309, 1315 (10th Cir. 2009), does not counsel otherwise. In *Parker*, the defendant faced, *inter alia*, a conspiracy charge for misrepresenting the condition of airplane engines and certifying fraudulent repairs done by an airplane mechanic shop. *Id.* at 1312. The district court admitted evidence of three engine sales that were not listed in the indictment but occurred within the conspiracy time frame as intrinsic

evidence, while also admitting evidence of two engine sales that occurred outside the charged conspiracy time frame as extrinsic Rule 404(b) evidence. The Tenth Circuit held that the district court did not commit plain error in admitting evidence of the sales that occurred outside the time frame of the charged conspiracy as extrinsic Rule 404(b) evidence. In doing so, the Court never addressed whether that evidence was equally admissible as intrinsic evidence. Thus, *Parker* is not dispositive of the issue here.

Further, the evidence at issue here is more closely connected with the charged offenses than was the Rule 404(b) evidence at issue in *Parker*. Notably, in *Parker*, the defendant faced one count of conspiracy, three counts of aiding and abetting or making or using false writing in connection with aircraft parts, and one count of mail fraud. *Id.* at 1312. At least one of the two sales admitted in *Parker* under Rule 404(b) did not involve the same co-conspirators from the charged sales. *Id.* at 1315. Those sales were admitted as separate, similar acts that the defendant committed outside of the charged conspiracy. *Id.* at 1314. In contrast, in the instant case, there is no alleged conspiracy or co-conspirator, and the evidence is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *Id.* (citation omitted). Accordingly, under the reasoning of *Parker*, Mr. Haack's eBay listings are properly considered intrinsic evidence.

In summary, although much of the government's proffered evidence involves sales and items of jewelry beyond the scope of the Superseding Indictment, that evidence "is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *Alfred*, 982 F.3d at 1279. Indeed, Mr. Haack's analogous and repeated claims regarding the provenance of the items of jewelry and his use of the same platform to continuously advertise and sell them indicate that the "acts are part of a single criminal episode."

*Lambert*, 995 F.2d at 1007. And while it is not necessary for intrinsic evidence to establish an element of a charged offense, evidence concerning the uncharged sales is indeed relevant to the existence of a scheme to defraud, which is a necessary element of Mr. Haack's charges for both mail fraud and wire fraud. 18 U.S.C. § 1343; 18 U.S.C. § 1341. Thus, the eBay records for purported Loloma items, Mr. Haack's representations regarding items' provenance, and the proffered witness testimony each constitute intrinsic evidence "essential to the context of the crime," and therefore are not subject to the requirements of Rule 404(b).

Intrinsic evidence is nevertheless subject to Rule 403, and Mr. Haack argues that the evidence that the government seeks to admit is "confusing, will waste time, and will lead to a series of mini [trials] regarding each piece of jewelry's authenticity." Doc. 125 at 4.  At a hearing on June 28, 2024, defense counsel argued that introducing evidence of the 52 items of jewelry not noted in the Superseding Indictment "would be a colossal waste of time." Transcript of June 28, 2024 Hearing ("Hr'g. Tr.") at 23:21-21; 23:10-11.[1] Defense counsel requested that the Court "limit [the] 54 pieces of jewelry down to, perhaps, a reasonable subset." Id. at. 23:12-13.

Rule 403 of the Federal Rules of Evidence allows a trial court to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Exclusion under Rule 403 is an "extraordinary remedy and should be used sparingly." *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999) (citations omitted). To be unfairly prejudicial, evidence must be likely to "provoke an emotional response in the jury or otherwise tend to affect adversely the jury's attitude toward the

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcripts may contain slightly different page and/or line numbers.

defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *United States v. Tan*, 254 F.3d 1204, 1212 (10th Cir. 2001) (cleaned up) (emphasis in original). Rule 403 also allows a trial court to exclude evidence when the probative value is substantially outweighed by the danger of "needlessly presenting cumulative evidence." Fed. R. Evid. 403. Ultimately, "the decision to exclude evidence under Rule 403 is within the sound discretion of the trial court." *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998) (citing *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1526 (10th Cir. 1997)).

Having found that the proffered evidence is relevant and intrinsic, the Court is nonetheless sympathetic to Mr. Haack's concerns about the cumulative nature of the evidence and its potential to result in both unfair prejudice and an unnecessary waste of time. For instance, the government has represented that it may need 15 minutes of direct testimony to introduce each of the items sold to Ms. Sadosky, Mr. Bradley, and Ms. Catalino. Hr'g. Tr. 15:13-15. Additional time would be necessary to introduce evidence particular to any of the more than 40 unassessed pieces of jewelry listed in the eBay record. The sheer volume of evidence thus might increase the risk that the jury will convict Mr. Haack, not on the basis of the evidence as it relates to the charged sales, but rather on the impression that they form from the evidence that he is the type of person who would engage in fraudulent conduct. At this juncture, the Court cannot assess which portions of the evidence might be cumulative and/or prejudicial. Accordingly, the Court will address specific Rule 403 objections raised during the trial.

**CONCLUSION**

The Court finds that the evidence of eBay listings of purported Loloma jewelry, the testimony of individuals who purchased purported Loloma jewelry from Mr. Haack, and the testimony of Verma Nequatewa and Bob Rhodes all constitute relevant intrinsic evidence to the

crimes with which Mr. Haack is charged. While the government has represented that it will be able to demonstrate the counterfeit nature of individual pieces of jewelry purchased by witnesses without causing significant delay, given the volume of listings of purported Loloma jewelry included in Mr. Haack's eBay records, the Court will consider any specific Rule 403 objections at trial.

**IT IS THEREFORE ORDERED** that the government's Motion in Limine for Pretrial Ruling That Haack's False Representations About the Provenance of the Jewelry He Sold to Two Victims and a USFW Agent are Relevant and Admissible [Doc. 118] and the government's Notice of Intent to Introduce 404(b) Evidence; Motion in Limine for Intrinsic Evidence and 404(b) Rulings [Doc. 120] are granted, consistent with this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Defendant Haack's Motion in Limine to Exclude Evidence Under Rules 404(b)(3) & 403 [Doc. 125] is denied, consistent with this Memorandum Opinion and Order.

ENTERED this 16th day of August 2024.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE