IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                                                    No. 18-CR-928 MV

ROBERT HAACK,

   Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Robert Haack's Motion for Release Pending Appeal. Doc. 272. The government filed a Response. Doc. 275. Having Considered the briefs and relevant law, and being otherwise fully informed, the Court finds that the Motion is well-taken and will be granted.

### BACKGROUND

In 2019, a grand jury returned an eight-count Superseding Indictment against Mr. Haack, charging him with fraud offenses related to a scheme to forge and sell Charles Loloma jewelry. Doc. 26. Before trial, Mr. Haack moved to suppress evidence that U.S. Fish & Wildlife Service (USFWS) agents found on the second floor of his California home. Doc. 45. In his Motion, Mr. Haack argued first that Ninth Circuit law controlled the Court's decision and second that USFWS agents illegally searched the second floor of his home and as a result, the exclusionary rule applied to all of the evidence discovered on that floor. *Id.* at 11.

This Court held a hearing on the Motion on May 24, 2024, in which it heard testimony from Special Agent (SA) Zachary Oper, as well as from Zenia Orbe, Mr. Haack's longtime partner.

1

At the hearing, the testimony established the following facts. On December 7, 2017, SA Oper applied for a warrant to search Mr. Haack's home in California. After reviewing financial and property records for the address, including a floor plan that indicated the residence contained an upstairs unit that was not connected to the first floor, SA Oper requested a search warrant for the first floor of the residence because he believed that was where Mr. Haack lived. SA Oper's intent was always to search the entirety of the Haack residence and indeed the probable cause statement in the warrant application referred to the entire residence, not just parts of the house. Thus, even though the initial search warrant authorized agents to search only the first floor of the residence, this was simply because the property records led SA Oper to believe that the first floor constituted the entire Haack residence.

On December 13, 2017, USFWS agents executed the warrant on Mr. Haack's home. Upon entry, they discovered that it was a two-story residence with an internal staircase. Mistakenly believing that the agents could seize evidence of jewelry-making tools from the second floor because they were in "plain sight," SA Oper directed agents to search the second floor and collect evidence. During their illegal search of the second floor, agents found evidence of suspected child pornography. Because of this discovery, SA Oper called an Assistant United States Attorney (AUSA). After discussing the suspected child pornography, the AUSA asked SA Oper how the search was progressing. When SA Oper explained that the home included an interior staircase leading to the second floor and that agents were searching the second floor, the AUSA advised him that he needed a search warrant to search the second floor. SA Oper then instructed his team to pause the search while he secured a second search warrant. By this time, the team had already extensively searched the second floor. SA Oper went to a local magistrate judge and requested a search warrant for the second floor of the home. The statement of probable cause for the warrant

did not rely on anything that the agents had found during their search of the second floor. A magistrate judge at the United States District Court for the Central District of California granted the second search warrant, authorizing agents to search the basement, first floor, and second floor of the home. When SA Oper returned to the property, agents began loading his vehicle with seized evidence from both the first and second floors.

Following the hearing, the Court issued a Memorandum Opinion and Order denying Mr. Haack's Motion, holding that the independent source doctrine applied. Doc. 143. Mr. Haack then filed a Motion for Reconsideration, Doc 147, arguing that the Court had overlooked testimony at the hearing which established that agents illegally discovered suspected child pornography, prompting SA Oper to call the AUSA, who then informed him that he needed to get a second warrant. Because the phone call was connected to the illegal search of the second floor, Mr. Haack argued that the independent source doctrine did not apply and that all evidence discovered on the second floor had to be excluded. The Court denied Mr. Haack's Motion for Reconsideration. In its Memorandum Opinion, the Court reasoned that although the phone call would not have occurred without the illegal discovery of the suspected child pornography, the independent source doctrine still applied because "it is not enough that an agent relies on information obtained as a result of the illegal search, rather there has to be some relation between the information obtained and the purpose of the warrant that is sought based on that information." Doc. 170 at 9. Ultimately, the Court reasoned that as a result of the phone call, "SA Oper was simply informed of the legal status of his search, which prompted him to course correct and seek a search warrant for the second floor." *Id.* at 11. Accordingly, the Court denied the Motion for Reconsideration and the evidence of jewelry and jewelry-making tools discovered on the second floor was admitted at trial.

Mr. Haack was ultimately convicted on the fraud charges at trial. On January 29, 2026, this Court sentenced Mr. Haack to 37 months in custody. Doc. 266. The Court allowed Mr. Haack to self-surrender on a date to be determined by the U.S. Marshal Service. *Id.* The final judgment against Mr. Haack was entered on February 9, 2026, Doc. 268, and Mr. Haack filed his Notice of Appeal on February 23, 2026. Doc. 269. The following day, the Marshal Service notified Mr. Haack that he needed to self-surrender no later than 2:00 p.m. on March 25, 2026. Doc. 275-1. Mr. Haack filed the instant Motion on February 26, 2026.

## LEGAL STANDARD

Under 18 U.S.C. § 3143(b), a court shall order that a defendant who has been found guilty of an offense and sentenced to a term of imprisonment and who has filed an appeal, to be imprisoned, unless the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger" to the community, that the appeal is "not for the purpose of delay," and that the appeal "raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B).

Whether a particular question is substantial must be determined on a case-by-case basis. *United States v. Affleck,* 765 F.2d at 952 (10th Cir. 1985); A "substantial question of law or fact" is "a 'close' question or one that very well could be decided the other way." *Id.* (quoting *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir. 1985)). Furthermore, "[a] court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* at 953. A defendant need only prove that a

substantial question of law or fact is likely to result in reversal by a preponderance of the evidence. *Id.* at 953 n. 15; *see also United States v. Williamson,* No. 11-CR-2784, 2013 WL 1658021, at *10 (D.N.M. March 20, 2013) (finding that a defendant must prove that a question of law is substantial by a preponderance of the evidence).

## DISCUSSION

Pursuant to 18 U.S.C. § 3143(b), the Court must first determine whether the defendant has shown by clear and convincing evidence that he is not likely to flee or pose a danger to the community. The government does not contest that Mr. Haack can meet this burden. Mr. Haack has been on conditions of release since April 30, 2018. Since that time, he has not failed to make any court appearances. The offense of conviction does not involve violence, drugs, or the presence of firearms, and Mr. Haack has no criminal history. Indeed, in recognition of Mr. Haack's performance on release, this Court granted Mr. Haack the opportunity to self-surrender on a date to be set by the United States Marshal Service, instead of detaining him at sentencing. Thus, the Court finds that Mr. Haack is not likely to flee or pose a danger to the community.

Having found that Mr. Haack satisfies the first prong of 18 U.S.C. § 3143(b), the Court next turns to the question of whether his appeal has been filed for purposes of delay and whether it raises a substantial question of law or fact likely to result in a reversal of his conviction or a new trial. First, the Court finds that the appeal is not for purposes of delay, as Mr. Haack's Motion highlights at least one legitimate basis for appeal, namely the Court's denial of his suppression motion. Next, the Court finds that Mr. Haack has shown by a preponderance of the evidence that his appeal raises a substantial question of law that, if decided in his favor, is likely to result in reversal of his conviction.

The primary issue Mr. Haack intends to litigate on appeal is the Court's denial of his suppression motion. He contends that the Court erred in finding that the second search warrant that authorized a search of the second floor of his home was sufficiently independent from the initial illegal search of the second floor. As the Tenth Circuit has held that each court must determine on a case-by-case basis whether a question raised by the defendant is substantial under 18 U.S.C. § 3143(b), the Court is persuaded that the unique facts of this case render its decision to deny Mr. Haack's suppression motion a close call that "very well could be decided the other way." *Affleck,* 765 F.2d at 952.

In denying his Motion, the Court found that the independent source doctrine applied because the second search warrant was free from the taint of the initial illegal search of the second floor. Contrary to the government's assertion that "this case is a straightforward application of settled law," in order to tackle the complex facts of this case, the Court had to engage in significant interpretation of the independent source doctrine without the guidance of settled precedent. Specifically, the chain of events leading up to SA Oper's decision to seek a second search warrant present a novel fact pattern. In most cases where courts hold that the independent source doctrine does not apply, the police conduct an illegal search, discover evidence, then use that evidence to secure a search warrant. *See Murray v. United States,* 487 U.S. 533, 542 (1988) (the independent source doctrine would not apply if "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the magistrate and that information affected his decision to issue the warrant"); *see also United States v. Kopankov,* 672 F. Supp. 862, 869 (N.D. Cal. 2023) (the independent source doctrine did not apply because the government relied on data illegally extracted from a particular device in order to obtain a second search warrant for that same device). In the instant case, USFWS agents

6

entered Mr. Haack's home, realized that there was a second floor, mistakenly believed that they could legally search that floor, and then engaged in an illegal search. Had nothing else occurred, this would have been a straightforward violation of the Fourth Amendment's warrant requirement that would require suppression of the evidence. However, the facts are not so simple. Upon the illegal discovery of suspected child pornography, SA Oper called an AUSA who then informed him that he needed to get a warrant for the second floor. SA Oper then secured a warrant without relying on any of the evidence illegally seized from the second floor.

In its opinion, the Court conceded that the AUSA's statement that SA Oper needed to get a search warrant for the second floor could be construed as "information gained from the Fourth Amendment violation," as the phone call would not have happened but for the agents' illegal discovery of suspected child pornography. Doc. 170 a 9 (quoting *United States v. Saelee,* 51 F.4th 327, 355 (9th Cir. 2022)). Nevertheless, the Court found that further interpretation of the independent source doctrine was required. Finding no controlling precedent with a similar fact pattern, the Court compared the facts of various independent source doctrine cases and held that "ultimately, to run afoul of the independent source doctrine, it is not enough that an agent relies on information obtained as a result of the illegal search; rather, there has to be some relation between the information obtained and the purpose of the warrant that is sought based on that information." Doc. 170 at 9. Based on this interpretation, the Court found that if, for instance, SA Oper secured a second search warrant for the second floor on the basis that agents had illegally discovered suspected child pornography, the independent source doctrine would not apply. But because this was not the case, and the AUSA merely informed SA Oper of the legal status of his search and the second search warrant did not rely on any evidence discovered on the second floor the second search warrant was sufficiently independent from the Fourth Amendment violation. *Id.* at 10.

While the Court does not now hold that its reasoning was incorrect, it notes that its decision was not necessarily obvious and straightforward and therefore constitutes a "close call" under *Affleck*.

As noted above, the Court was unable to find any precedent directly analogous to this case. The Tenth Circuit has held that a question of law that has not been decided by precedent is not necessarily substantial. *Affleck,* 765 F.2d at 952. However, in illuminating this distinction, the *Affleck* Court stated that a question of law decided without precedent may not be substantial if it is one that is "so patently without merit that it has not been found necessary for it to have been resolved," or if "there is no real reason to believe that [the controlling] circuit would depart from unanimous resolution by other circuits." *Id.* (quoting *Giancola,* 754 F.2d at 901). Mr. Haack's argument against the Court's application of the independent source doctrine is not "patently without merit," as the Court in its opinion denying Mr. Haack's Motion for Reconsideration recognized that alternative arguments exist in favor of Mr. Haack's position. Furthermore, the Court has been unable to find any analogous precedent, let alone any unanimous consensus among circuits. Thus, the fact that the Court's decision was not decided by clear controlling precedent militates a finding that the suppression motion presents a substantial question of law for appeal.

Of course, the fact that Mr. Haack has shown by a preponderance of the evidence that his appeal raises a substantial question of law is insufficient to warrant release under 18 U.S.C. § 3143(b). The question must be "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Affleck,* 765 F.2d at 952. Here, suppression of the evidence discovered on the second floor would likely require reversal of the conviction. The government's theory of the case was that Mr. Haack was forging and then selling fake Charles Loloma jewelry. On the second floor of Mr. Haack's home, USFWS agents found many boxes of jewelry-making tools, books about

indigenous jewelry, and stamps that the government alleged were used to forge Mr. Loloma's signature on the jewelry Mr. Haack sold. Since Mr. Haack denied knowing that the jewelry he sold was inauthentic, this circumstantial evidence of forgery constituted a substantial portion of the government's case. Without the evidence discovered on the second floor, Mr. Haack very well could have challenged the sufficiency of the evidence against him, as there was no direct evidence of Mr. Haack making the jewelry presented at trial. Accordingly, a reversal of this Court's suppression order would likely require reversal of the conviction or a new trial. *Compare United States v. Handy,* 761 F.2d 1279 (9th Cir. 1985) (if trial court's ruling denying defendant's suppression motion and admitting heroin evidence were reversed, defendant's conviction for importation of heroin likely would have been reversed).

In sum, the Court finds by clear and convincing evidence that Mr. Haack is not likely to flee or pose a danger to the community. The Court further finds that Mr. Haack has carried his burden and shown by a preponderance of the evidence that his appeal poses a substantial question of law that, if decided in his favor, is likely to result in reversal of his conviction or new trial. Accordingly, Mr. Haack has satisfied the requirements for release under 18 U.S.C. § 3143(b).

**CONCLUSION**

Having found that Mr. Haack satisfies the requirements of 18 U.S.C. § 3143(b), the Court will grant his Motion for Release Pending Appeal. Mr. Haack does not need to self-surrender by March 25, 2026, instead he will continue to stay on release on the same conditions that the Court has previously imposed until his appeal has been resolved.

**IT IS THEREFORE ORDERED** that Mr. Haack's Motion for Release Pending Appeal [Doc. 271] is **GRANTED**.

ENTERED this 20th day of March 2026.

_____

THE HONORABLE MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE